RECEIVED

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

2018 MAY 15  A 10: 36

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

DEILDRICK CARROLL,                    )
                                      )
        Plaintiff,                    )      CASE NO. 2:18-cv-495
                                      )
v.                                    )
                                      )      JURY TRIAL REQUESTED
LEAR CORPORATION,                     )
                                      )
        Defendant.                    )

## COMPLAINT

**COMES NOW** the Plaintiff, Deildrick Carroll, by and through his undersigned counsel of record, and hereby doth complain and aver against the above-named Defendant, as set forth herein-below.

### I. JURISDICTION & VENUE

1.      Plaintiff Carroll files this Complaint, institutes these proceedings, and invokes the jurisdiction of this Court under and by virtue of 28 U.S.C. §§ 1331 and 1334 (a)(4), as an action arising under the Act of Congress known as Title VII of the Civil Rights Act of 1964, (42 U.S.C. § 2000(e) et seq.), as amended by the 1991 Civil Rights Act, 42 U.S.C. § 1981(a); and 42 U.S.C. § 1201, et seq., to obtain equitable relief, the costs of suit, including reasonable attorneys' fees, and damages suffered by the Plaintiff, due to the Defendant's discrimination and retaliation against Plaintiff.

2.      Plaintiff Carroll filed a charge of race discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in Birmingham, Alabama on April 25, 2017. Plaintiff received a right-to-sue on March 27, 2018, giving Plaintiff the right to pursue this claim in federal court for 90 days after said receipt. (Exhibit A). Plaintiff Carroll filed a charge of race and retaliation discrimination with the EEOC on September

1

6, 2017. Plaintiff received a right-to-sue on March 27, 2018, giving Plaintiff the right to pursue this claim in federal court for 90 days after said receipt. (Exhibit B).

3.     Venue is proper in the Northern Division of the Middle District of Alabama, since the alleged discriminating action of Defendant occurred in Montgomery County, Alabama.

## II. PARTIES

4.     The named Plaintiff, Deildrick Carroll (hereinafter "Plaintiff" or "Mr. Carroll"), is a citizen of the United States and a resident of the State of Alabama. Plaintiff is over the age of nineteen years.

5.     The Defendant, Lear Corporation (hereinafter "Defendant" or "Lear"), is located in Montgomery County, Alabama and does business within the State of Alabama. At all times relevant to this complaint, Plaintiff was employed, and continues to be employed, by Defendant.

## III. STATEMENT OF FACTS

### A. Facts Related to Mr. Carroll's Race Discrimination Claim

6.     Mr. Carroll is an African-American male. Mr. Carroll began working for Lear Corporation in Montgomery, Alabama on or about July 2012. Mr. Carroll is currently employed at Lear as a maintenance technician.

7.     From on or about July 2012 until on or about October 2017, Mr. Carroll worked as a maintenance technician on the third shift (10:15 pm to 6:30 pm). At that time, a total of twelve (12) maintenance technicians were employed by Lear to work on the first, second, and third shifts. Of those twelve (12) maintenance technicians, ten (10) were Caucasian and two (2), including Mr. Carroll, were African-American.

8.     On or about April 18, 2017, Mr. Carroll and Raymond Smith, the only other African-American maintenance technician on third shift, were suspended for three (3) days by Lear's Engineering Manager, Michael Clements, a Caucasian male, for "job abandonment." Mr. Clements stated that Carroll and Smith "had left our shift early without informing the plant supervisor."

9.     However, only a few weeks earlier, on or about April 1, 2017, Jeff Corbin and Joseph Lejeune, two Caucasian maintenance technicians, left work early before their shift was over, and they were not disciplined, written up, or suspended.

10.    As a result of his suspension, Mr. Carroll lost valuable income and received a disciplinary mark on his personnel record, both having an adverse effect on Mr. Carroll.

11.    Further, from on or about mid-2015 until on or about April 10, 2017, Mr. Carroll was denied internet access on Lear's computers without reason. Mr. Carroll was previously able to access the internet on Lear's computers, but without explanation, Lear terminated, prevented, and/or denied Mr. Carroll's access during this time period. However, Caucasian maintenance technicians were allowed to maintain their internet access during this time and Mr. Carroll often observed Caucasian maintenance technicians using the internet on Lear computers.

12.    Mr. Carroll was routinely denied maintenance calls that he is fully capable of completing because other Caucasian technicians, namely Chad Posey and Phil Chapman, prevented him from having access to certain maintenance calls. Mr. Carroll complained about this his supervisor, Mr. Clements, but Lear failed to respond.

13.     On several occasions, Mr. Carroll was denied vacation leave time he requested more than a week in advance. However, Caucasian employees Mr. Posey, Mr. Chapman, and others routinely had their vacation leave requests approved, no matter when they requested the leave time.

14.     Mr. Carroll avers that Lear management allows Caucasian maintenance technicians to do whatever they please, without consequences, while he was singled out, targeted, and overly-criticized, by Lear Management and received an unjustified suspension because of his African-American race.

15.     Mr. Carroll contacted Lear's Human Resources department to report the racist atmosphere and disparate treatment of African-American employees at Lear's Montgomery facility, but Lear turned a deaf ear and failed to correct any of these problems.

16.     Based on the foregoing, Mr. Carroll avers he has been subjected to disparate treatment, a cold and hostile work environment, and illegal discrimination on the basis of his African-American race, in violation of Title VII, 42 U.S.C. § 2000(e). As a result of the illegal race discrimination practiced against him, Mr. Carroll has lost income, and incurred the expense of hiring an attorney. In addition, Mr. Carroll has suffered mental and emotional distress.

### B. Facts Related to Mr. Carroll's Retaliation Claim

17.     Mr. Carroll filed a charge of race discrimination (Charge No. 420-2017-01722) against Lear with the EEOC on April 25, 2017. Raymond Smith, the only other African-American maintenance technician at Lear, also filed a charge of race discrimination against Lear the same day.

18.     Less than four months after filing his charge of discrimination, on or about August 23, 2017, Mr. Carroll received an "Assertive Corrective Action Record" for not calling into the "Lear Quest Line" to report he was running late for work.  Mr. Carroll did, however, contact Pat Rance, Lear's first shift team leader, informing him that he was running late.  Nonetheless, as a result of the corrective action, Lear punished Mr. Carroll with a three-day unpaid suspension from September 13 through September 15, 2017.

19.     Other Caucasian Lear employees were often late and/or experienced no shows for work but were not required to contact the Lear Quest Line.  In addition, Jesse Kilpatrick was 30-45 minutes late for work one week before Mr. Carroll was suspended, and even though he did not call to say he would be late, Mr. Kilpatrick was not suspended.

20.     Reflecting Lear's retaliatory motive towards Mr. Carroll, and sending a warning sign by Lear to Mr. Carroll, Raymond Smith, the other African-American maintenance technician at Lear, who filed a race discrimination charge with the EEOC against Lear when Mr. Carroll filed his charge with the EEOC, was terminated on or about August 23, 2017.

21.     Accordingly, Mr. Carroll avers he was subjected to illegal retaliation and discrimination by Lear Corporation, in violation of Title VII, 42 U.S.C. § 2000(e), et seq., due to his filing an EEOC charge of discrimination against Lear on April 25, 2017.  As a result of this retaliation, Mr. Carroll has lost income, suffered mental and emotional distress, and incurred costs.

## IV. PLAINTIFF'S FIRST CAUSE OF ACTION

### RACE DISCRIMINATION

22.    Plaintiff repeats, realleges and incorporates by reference paragraphs 1 through 21 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward him violated his right to be free of race discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. § 2000(e), et seq.), and the 1991 Civil Rights Act, and 42 U.S.C. 1981(a).

23.    As a proximate cause of Defendant's afore-described actions in discriminating against Plaintiff, due to his race, Plaintiff was injured and damaged, as set forth in paragraphs 1 through 21 above. In addition, Plaintiff suffered considerable mental and emotional anguish.

24.    Plaintiff avers that he has pursued and exhausted her administrative remedies.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Carroll respectfully prays that this Court grant him the following relief:

a)    Judgment declaring that the Defendant discriminated against Plaintiff, on the basis of Plaintiff's race;

b)    An order granting Plaintiff compensation for rights to which Plaintiff would have been entitled, had Plaintiff not been the victim of race discrimination, effective from the date of final judgment;

c)    An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

6

d) An award of punitive damages, due to the egregious nature of the race discrimination practiced against Plaintiff, so openly tolerated, ratified and acquiesced in by the Defendant;

e) An award of all court costs and reasonable attorneys' fees, including those incurred for seeking prior administrative relief; and

f) Such further, other and different relief as the Court may deem appropriate and necessary.

## V. PLAINTIFF'S SECOND CAUSE OF ACTION

## RETALIATON DISCRIMINATION

25. Plaintiff Carroll repeats, realleges and incorporates by reference paragraphs 1 through 21 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward him, including the unlawful retaliation against him, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, (42 U.S.C. §2000e, et seq.), as amended by the 1991 Civil Rights Act.

26. As a proximate cause of Defendant's afore-described actions of unlawful retaliation against Plaintiff, the Plaintiff was injured and damaged, as set forth in paragraphs 1 through 21 above. In addition, Plaintiff has suffered considerable mental and emotional anguish.

27. Plaintiff avers that he has pursued and exhausted his administrative remedies.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Carroll respectfully prays that this Court grant the following relief:

a)   A declaratory judgment declaring that the Defendant has unlawfully retaliated against the Plaintiff due to his filing a complaint of race discrimination with the EEOC;

b)   An award of compensatory damages, including for mental anguish, to which the Plaintiff may be entitled;

c)   An award of punitive damages, due to the egregious nature of Defendant's wrongdoing.

d)   An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e)   Such further, other and different relief as the Court may deem appropriate and necessary.

## V. PLAINTIFF'S THIRD CAUSE OF ACTION

## RACE-BASED COLD AND HOSTILE WORKING ENVIRONMENT

28.   Plaintiff repeats, realleges and incorporates by reference paragraphs 1 - 21 above, the same as if more fully set forth herein, and further avers that the Defendant's actions toward him violated his right to be free of a race-based cold and hostile working environment in employment, in violation of Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. §2000(e), et seq.), as amended by the 1991 Civil Rights Act.

29.   Plaintiff avers the Defendant's conduct has become a condition of his continued employment and that the conduct is pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, and/or abusive.

30.   As a proximate cause of Defendant's afore-described conduct, the Plaintiff was injured and damaged, as set forth in paragraphs 1 through 21 above.  In addition, Plaintiff has suffered considerable mental and emotional anguish.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that this Court grant the following relief:

a)   A judgment declaring that the Plaintiff was subjected to an egregious race-based hostile work environment;

b)   An award of compensatory damages, including for mental anguish, to which Plaintiff may be entitled;

c)   An award of punitive damages due to the egregiousness of Defendant's wrongdoing;

d)   An award of all court costs and reasonable attorneys' fees, including those incurred for seeking administrative relief;

e)   Such further, other and different relief as the Court may deem appropriate and necessary.

## VII.  JURY DEMAND

Plaintiff hereby requests trial by jury on all issues so triable.

Respectfully submitted this  _15th_  day of May, 2018.

Deildrick Carroll, Plaintiff

Julian McPhillips (ASB-3744-L74J)
Counsel for Plaintiff

9

**Chase Estes (ASB-1089-F44L)**
Counsel for Plaintiff

**OF COUNSEL:**
**MCPHILLIPS SHINBAUM, L.L.P.**
516 South Perry Street
Montgomery, Alabama 36104
Telephone: (334) 262-1911
Facsimile: (334) 263-2321
julianmcphillips@msg-lawfirm.com
cestes@msg-lawfirm.com