IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEILDRICK CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-495-WKW |
| | ) | [WO] |
| LEAR CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff Deildrick Carroll alleges that his employer engaged in racial discrimination, retaliation, and the creation of a racially hostile work environment. On January 6, 2020, the Magistrate Judge filed a Recommendation (Doc. # 40) that Defendant's motion for summary judgment (Doc. # 21) be granted. Plaintiff timely objected to the Recommendation. (Doc. # 41.) Upon an independent and *de novo* review of the record, Plaintiff's objections are due to be overruled, and the Magistrate Judge's Recommendation is due to be adopted.

**I. DISCUSSION**

The Magistrate Judge provided a thorough recitation of the factual and procedural history of this case, which need not be repeated here. (*See* Doc. # 40, at 4–9.) Mr. Carroll has not objected to the Recommendation's findings on his racial

discrimination or hostile work environment claims. (*See* Doc. # 40, at 11–28, 33–48.) The Recommendation's findings on these claims are due to be adopted without further discussion.

Mr. Carroll objects to the finding that there was no causal link between his April 25, 2017 filing of a charge of discrimination with the EEOC and his August 23, 2017 Corrective Action and September 2017 suspension." (Doc. # 41, at 4.) Plaintiff contends that he has provided sufficient evidence of a causal link because Debbie Owens, Lear's Human Resources Manager, was aware of his EEOC charge and a signatory to, and thus decision-maker regarding, his August corrective action. (Doc. # 41, at 5; *see* Doc. # 23-1, at 116–17; Doc. # 25-3, at 1.)

He also contends that his testimony regarding other employees' lack of familiarity with the Quest line and Mr. Cassebaum's statements upon presenting Mr. Carroll with the corrective action show that Lear's offered justifications are pretextual. (Doc. # 41, at 5 ("Mr. Carroll testified that 'Lear didn't enforce [calling the Quest Line].' Mr. Carroll testified that he had asked other employees if they called the line when they're late. Of the employees Mr. Carroll spoke with, . . . [five] informed Mr. Carroll that they did not know the number to Lear's Quest Line." (citations omitted))); (Doc. # 41, at 5 ("Mr. Cassebaum, who presented Mr. Carroll with the write-up, stated he 'did not know why [Carroll was] being wr[itten] up for [being late],' and that he 'didn't agree with [the write-up].' Mr. Cas[s]ebaum further

informed Mr. Carroll he 'didn't think it would have to be so harsh' since Mr. Carroll informed his shift leader that he was going to be late." (second alteration added) (citations omitted)).) This objection is insufficient to save Mr. Carroll's retaliation claim from summary judgment.

Mr. Carroll's brief objection merits a brief response. Mr. Carroll's objection that the Recommendation overlooked Ms. Owens's role in his suspension throws an untimely curveball into this matter. Both parties' briefs asserted that Mr. Clements was the decision-maker for the second suspension, but there appears to be a lack of evidence supporting this assertion or illuminating who the decision-maker was for his second suspension. In Mr. Carroll's interrogatories to Lear, he did not ask who the decision-makers regarding his second suspension were. (*See* Doc. # 25-10.) Additionally, Plaintiff's original response brief states, "[I]n its position statement to the EEOC, Lear states that '[Mr.] Clements made the decision to discipline Carroll for not calling into the Lear Quest Line.' (Exhibit I)." (Doc. # 25, at 16 (first alteration added).) However, Exhibit I, (Doc. # 25-9), is a position statement dated June 28, 2017, before his second suspension, so there is no position statement in the record with that assertion, and Plaintiff's general argument in that brief is that "*Lear* made the decision to discipline Mr. Carroll." (Doc. # 25, at 20–21. (emphasis added)) Lear's original reply brief asserts without citation to the record that Mr. Clements was "the decision-maker with respect to both suspensions." (Doc. # 26, at

3

7.) Still, Lear confirmed that a previous human resources manager participated in the decision-making process regarding Mr. Carroll's first suspension by "authoriz[ing] the processing of the corrective action," (Doc. # 25-10, at 2–3), and Ms. Owens's verified statement says, "The Human Resources Department is responsible, in part, for administering the progressive corrective action policy and the attendance policy," (Doc. # 23-1, at 116). Therefore, there is some evidence from which to infer Ms. Owens was both aware of his EEOC charge and a decision-maker regarding his second suspension.

However, the court need not assess whether there was a close enough temporal link between the EEOC complaint (or his allegedly protected email activities (Doc. # 41, at 5)) and his second suspension to constitute a causal link. Even if a link existed and if Mr. Carroll established his *prima facie* case, Mr. Carroll has not established that Ms. Owens had the authority to suspend Mr. Carroll, and he has failed to rebut Lear's proffered non-retaliatory reason for this suspension.

First, on the issue of Ms. Owens's authority, the pleadings establish that Mr. Clements suspended Mr. Carroll in April 2017. (Doc. # 1, at 3; Doc. # 10, at 4 (admitting Plaintiff's allegation that Mr. Carroll was "suspended by Engineering Manager, Michael Clements")); *see Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). This admission of decision-making authority with

respect to the first suspension casts doubt on whether Ms. Owens could overrule Mr. Clements or suspend Mr. Carroll without Mr. Clements's authorization. The evidence discussed *supra* suggests that Ms. Owens played a role in the suspension, but it suggests she "functioned as a facilitator or conduit only, while true decision-making authority over personnel such as" Mr. Carroll "resided with" Mr. Clements. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997) (upholding a grant of summary judgment where a company vice-president without knowledge of the protected expression denied that a regional branch manager with such knowledge terminated the plaintiff, and where the plaintiff failed to establish the branch manager's authority). It appears that Plaintiff failed to ascertain who the decision-makers regarding his second suspension were and what role each played in his suspension. Therefore, Plaintiff has not produced sufficient evidence that Lear "had delegated final authority" to Ms. Owens to make suspension decisions to raise a genuine dispute of material fact. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162 (11th Cir. 1993) (upholding a denial of summary judgment where Plaintiff "elicited evidence that the City had delegated final authority to Mayor Shell to make employment decisions within the City Clerk's Office. The City offered no evidence of any limitations on Mayor Shell's authority in this regard.").

Second, on the issue of pretext, Lear has offered a non-retaliatory rationale for its suspension decision: Mr. Carroll violated the company attendance policy by

5

showing up over an hour late to work without calling the Quest line. (*See* Doc. # 23-1 at 34, Tr. 127:2–128:8, 128:13–129:3; Doc. # 23-1, at 126–28; Doc. # 22, at 11–12.) Mr. Carroll has not carried his burden of showing that Lear's offered rationale was pretextual, which requires showing that the stated reason for the adverse action was "false and that the real reason was retaliation." *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1061 (11th Cir. 1999); *see also Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (noting that "[w]here, as here, the plaintiff's evidence of retaliation is entirely circumstantial, the burden of proof shifts between the parties in accordance with the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)."); (Doc. # 40, at 27–28 (discussing Mr. Carroll's failure to show pretext in the context of his racial discrimination claim)).

First, and itself fatal to Plaintiff's claim, Mr. Carroll cannot show that the proffered reason was false. He has admitted that he arrived at least an hour late to work on August 23, 2017, that he did not call the Quest line, that the next step under the progressive corrective action policy was discharge, and that Lear gave him a break by suspending him. (Doc. # 25, at 6; Doc. # 23-1, at 34, Tr. 128:20–23.)

Second, Mr. Carroll's assertion that Lear did not enforce the Quest line policy is not supported by the evidence. Lear's responses to interrogatories indicate that twenty-nine employees (including Mr. Carroll) have been disciplined for not calling

6

the Quest line to report an absence in the past five years. This includes one employee who only worked during 2017 and who therefore must have been disciplined in the same year as Mr. Carroll. (Doc. # 25-10, at 6–7.) Likewise, his coworkers' statements that they did not use the Quest line provide no grounds for a finding of pretext. Plaintiff has not offered evidence regarding whether these employees have ever arrived over an hour late, have engaged in protected activity, or have similar disciplinary histories, among other possible points of comparison. In fact, one of these employees appears to have been disciplined for not calling the Quest line to report an absence. (Doc. # 25-10, at 7 (identifying Lorenzo F. Robinson as a disciplined employee); Doc. # 41, at 5 (identifying Lorenzo Robinson as one of the employees who told Mr. Carroll that they did not know the Quest line number).) These employees' experiences, therefore, do not demonstrate "weaknesses implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions [such] that a reasonable factfinder could find them unworthy of credence." *Furcron*, 843 F.3d at 1313 (quoting *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005)).

Finally, Mr. Cassebaum's statements indicating *disagreement* with the severity of Mr. Carroll's punishment are insufficient to "permit a reasonable factfinder to conclude that the reasons given by [Lear] were not the real reasons for the adverse employment decision." *Id.* (quoting *Combs v. Plantation Patterns*, 106

7

F.3d 1519, 1528 (11th Cir. 1997)). Mr. Carroll's assertions to the contrary amount to little more than conclusory allegations, which cannot defeat summary judgment. Ultimately, Mr. Carroll cannot carry his burden, and the Recommendation is due to be adopted.

## II. CONCLUSION

Accordingly, it is ORDERED as follows:

1. The Magistrate Judge's Recommendation (Doc. # 40) is ADOPTED;

2. Plaintiff's objection (Doc. # 41) is OVERRULED; and

3. Defendant's Motion for Summary Judgment (Doc. # 21) is GRANTED.

A final judgment will be entered separately.

DONE this 11th day of February, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE